UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRANDON HART,

                              Plaintiff,                    1:25-cv-01394 (BKS/CBF)

v.

INDEED, INC., FEDERAL BUREAU OF
INVESTIGATIONS ("FBI"), and IC3, Department within
the FBI,

                              Defendants.
_____

**Appearances:**

*Plaintiff Pro Se:*
Brandon Hart
Manhattan, NY 10036

*For Defendant Indeed, Inc.:*
Brendan M. Palfreyman
Harris Beach Murtha Cullina PLLC
333 West Washington Street, Suite 200
Syracuse, NY 13202

*For Defendants FBI and IC3:*
David M. Katz
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff pro se Brandon Hart filed this action against Defendants Indeed, Inc., Federal

Bureau of Investigation ("FBI"), and IC3 (a "department within the FBI"), alleging that

1

Defendants have retaliated against him for filing a lawsuit. (Dkt. No. 1).[1] Plaintiff has also filed a motion for injunctive relief. (Dkt. No. 4).[2] Presently before the Court is Defendant Indeed, Inc.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), 12(b)(5), and 12(b)(6). (Dkt. No. 11, at 1). The motion is fully briefed. (*See* Dkt. Nos. 11-3, 18[3], 22). Also before the Court is Defendants FBI and IC3's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or to transfer pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 35). That motion is also fully briefed. (Dkt. Nos. 35-1, 37, 37-1, 38). For the reasons that follow, both motions to dismiss are granted in their entirety.

## II.    FACTS[4]

The Complaint is forty-seven pages long, single-spaced, repetitive, and difficult to follow. Plaintiff recounts a litany of events that have occurred at largely unspecified times "since 1997." (Dkt. No. 1, at 9). Plaintiff appears to allege that the FBI Defendants have, inter alia, caused his business to be audited and his LLC to be dissolved, (*id.* at 12-15), interfered with many of his business projects, (*id.* at 31 ("I believe the FBI knew if they attacked my income and cashflow it would apply more pressure on me to stop this pursuit of suing the FBI and defendants.")), "orchestrated" his arrest in North Carolina "in hopes [he] would get a DUI or to slow [him] down," (*id.* at 17-18),  manipulated his banking and credit card accounts, (*id.* at 19-

---

[1] On October 20, 2025, Plaintiff filed a five-page "supplemental pleading" with an additional allegation of retaliation. (Dkt. No. 8). This submission was docketed as an amended complaint. In recognition of Plaintiff's pro se status, the Court has construed the second "supplemental pleading" and the initial forty-seven-page complaint together as the operative Complaint. Plaintiff paid the filing fee and does not seek *in forma pauperis* status under 28 U.S.C. § 1915. (Dkt. No. 1).

[2] Defendant Indeed filed a separate brief opposing Plaintiff's request for injunctive relief. (*See* Dkt. No. 12).

[3] Plaintiff's opposition brief is also docketed at Dkt. No. 21. The briefs appear identical, except the later-filed version of the opposition brief is unsigned, (Dkt. No. 21, at 18), and is missing an extraneous page of data that appears to have been inadvertently filed in in the first-filed version, (*see* Dkt. No. 18, at 14).

[4] These facts are drawn from the original complaint and Plaintiff's supplemental pleading. (Dkt. Nos. 1, 8). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21), and tampered with his technology and his emails, (*id.* at 22-24). Plaintiff also alleges that the FBI caused his eviction, (*id.* at 25-26), "contacted [his] ex-wife to cause internal relationship problems," (*id.* at 15), and interfered with his use of dating websites, (*id.* at 38-39 (alleging Plaintiff has "contacted 4000 women" and "still [has] not been on a date in three years")). Plaintiff further appears to allege that the FBI has not responded to his reported "death threats during this lawsuit," that he and his family have been repeatedly drugged or poisoned by people tampering with their food and drink, and that he and his family have been in multiple "staged" automobile accidents. (*Id.* at 26-28).[5]

With respect to Defendant Indeed, Plaintiff alleges that he "has been a customer of Indeed for the past three years." (*Id.* at 5). Plaintiff "posted ads for many of his companies and spent approximately 34,000 dollars . . . because he travels to many different towns throughout [sic] and hires temporary help to perform his construction projects." (*Id.*). "[Plaintiff had] consistently [been] paying Indeed for employer posting[,]" (*id.* at 6), and "posted several job postings" using Indeed "throughout NY State[,]" (*id.* at 7).

"Years" after Plaintiff reported to the FBI and IC3 that "his computer and network was broken into," Plaintiff "decided to hire a Cyber Intrusion Forensic Expert to add to his tech department" because "the FBI and IC3 would not assist [him] with the electronic communication issues[,]" and "would not comment" on Plaintiff's case. (*Id.* at 6). Plaintiff "received 97 resumes" but his account was terminated before he could review them. (*Id.*). Indeed "would not give an explanation for the reasons why they have done this." (*Id.*). Plaintiff "was not able to hire

---

[5] At times it is unclear whether Plaintiff means to allege that the FBI is directly responsible for these incidents or, as Plaintiff appears to have alleged in his previous lawsuits, that the FBI is liable because they have ignored his complaints. (*See* Dkt. No. 1, at 2 ("These crimes were possibly done before the FBIs involvement, but certainly during their involvement and during their gross negligence and afterwards. However, this lawsuit and complaint is not necessarily about those crimes[.]")).

for this position and believed Indeed was contacted by resourceful people and made efforts to have his account terminated and not be able to hire an expert in the field[.]" (*Id.*). After corresponding with Plaintiff, Indeed agreed to "activate" Plaintiff's account but would not allow him to review any of the resumes he received for his "Cyber and Forensic Security" posting. (*Id.*).

"Approximately a year later [Plaintiff] was still being targeted" and once again "listed the posting for a Digital Forensic Analyst and received a lot of resumes again, but the next day before reviewing them, Indeed terminated his account again and would not open up the account or let him review the resumes[.]" (*Id.* at 7). Plaintiff believes that Indeed has "collu[ded]" with the FBI "and/or IC3" to prevent him from hiring an expert "to protect [him]self." (*Id.* at 10-11).[6]

## III.    OTHER LITIGATION

This case is one in a series of similar lawsuits Plaintiff has brought against the FBI in the Western District of North Carolina, *see Hart v. FBI*, No. 24-cv-500, 2024 WL 4009646, 2024 U.S. Dist. LEXIS 157064 (W.D.N.C. Aug. 30, 2024) (*Hart I*), and in the Southern District of New York, *see Hart v. FBI*, No. 24-cv-7423, 2025 WL 1024521, 2025 U.S. Dist. LEXIS 66217 (S.D.N.Y. Apr. 7, 2025) (*Hart II*); *Hart v. FBI*, No. 25-cv-781, 2025 WL 1190808, 2025 U.S. Dist. LEXIS 76773 (S.D.N.Y. Apr. 22, 2025) (*Hart III*); *Hart v. FBI*, No. 25-cv-781, 2025 U.S. Dist. LEXIS 110084 (S.D.N.Y. June 10, 2025) (*Hart IV*).[7] (*See also* Dkt. Nos. 11-3, at 5-6 (noting "[t]his lawsuit is one of a string of similar lawsuits filed by Plaintiff against the FBI and

---

[6] In his opposition to the motion to dismiss Plaintiff noted that he is not challenging Indeed's termination of his account. Plaintiff stated that he "understand[s] that Indeed has a 'catch all' clause in their agreement to do business with Indeed that allows them to essentially do anything they elect to do, but this is not what they are being sued for. They are being sued for colluding with a Government Department to hurt a United State Citizen. This is not only a civil issue but is aiding and abetting criminal activity which is in conjunction of other actions of the departments illegal interference has led to murder attempts and torture tactics that are not allowed in the United States." (Dkt. No. 18, at 5).
[7] There is no available Westlaw citation for *Hart IV*.

other intelligence agencies involving perceived conspiracies"); 35-1, at 12-13 (recounting Plaintiff's three other lawsuits in detail)); 1, at 2 ("I have three cases vs the FBI . . . about crimes against me")).[8] Each of these lawsuits appears to allege that unspecified actors have caused Plaintiff, his family, or his business some degree of harm, and that the FBI has failed to investigate or assist him. *See Hart I*, 2024 WL 4009646, at *1, 2024 U.S. Dist. LEXIS 157064, at *1 ("In both the original Complaint and the Amended Complaint, Plaintiff appears to allege that unspecified actors have threatened or attempted to cause harm to himself, his business, and one or more of his family members over a period of years stretching back to 1997, and the FBI failed to investigate these matters or otherwise assist him in some way."); *Hart v. FBI*, No. 24-cv-7423 (S.D.N.Y. filed Oct. 1, 2024), Dkt. No. 1, at 4-5 (alleging FBI was "negligent" for failing to investigate Plaintiff's claims that he has been the victim of "irrefutable crimes"); *Hart III*, 2025 WL 1190808, at *1, 2025 U.S. Dist. LEXIS 76773, at *2 (observing that this was Hart's second action filed in S.D.N.Y., and that Plaintiff's claims "further duplicate[d] the claims raised" in the W.D.N.C and the prior S.D.N.Y. actions).

The Western District of North Carolina dismissed Plaintiff's complaint for failure to exhaust his administrative remedies and for failure to state a claim. *See Hart I*, 2024 WL 4009646, at *3, 2024 U.S. Dist. LEXIS 157064, at *5. Plaintiff's first action in the Southern District of New York was dismissed under Federal Rule 4(m) for failure to serve any of the Defendants. *Hart II*, 2025 WL 1024521, at *2, 2025 U.S. Dist. LEXIS 66217, at *4-5. The Southern District of New York granted Plaintiff's motion to amend in his second action, *see Hart*

---

[8] The FBI Defendants note that, since filing this action in the Northern District of New York, Plaintiff has commenced another action "naming the FBI, IC3, and the United States among others" in the Western District of Texas. (*See* Dkt. No. 35-1, at 13 n.3 (citing *Hart v. FBI*, 26-cv-00171 (W.D. Tex. 2026 filed Jan. 22, 2026))). Plaintiff also appears to have a case open in the District Court for the District of Columbia against the Central Intelligence Agency. (*See* Dkt. No. 11-3, at 5 (citing *Hart v. Central Intelligence Agency*, No. 25-cv-3002 (D.D.C. filed Sep. 4, 2025))).

*III*, 2025 WL 1190808, at *4, 2025 U.S. Dist. LEXIS 76773, at *8-9, but there is a report-recommendation pending which recommends that action be dismissed with prejudice for failure to state a claim and failure to comply with Rule 8, *see Hart IV*, 2025 U.S. Dist. LEXIS 110084, at *7-8.

## IV.    DISCUSSION

### A.    Rule 8(a)

Both Defendants argue that Plaintiff's claims fail to satisfy the pleading requirements of Rule 8(a)(2). (See Dkt. Nos. 11-3, at 14 ("Plaintiff's Original Complaint—which totals 47 single-spaced pages of confusing allegations and disorganized narrative—does not provide a 'short and plain' statement of Plaintiff's claims."); 35-1, at 20-23 ("[I]t is impossible for Defendant to understand what Plaintiff is complaining about, to answer his claims, or to determine whether he has a legal basis for recovery.")). The Court agrees.

Federal Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [them] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Dismissal under Rule 8 is "appropriate in 'those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Owens v. McCall*, 5 F. App'x 15, 16 (2d Cir. 2001) (quoting *Salahuddin,* 861 F.2d at 42).

Even when construing the Complaint liberally and according Plaintiff the "special solicitude" to which he is entitled as a *pro* se party, *see Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)), the Complaint does not

6

satisfy the pleading requirements of Rule 8. The Complaint is disjointed, at times unintelligible, and entirely speculative as to Defendants' alleged conspiracy to cause him harm. (*See, e.g.,* Dkt. No. 1, at 9 (stating Plaintiff "will explain all of the unbelievable illegal activities that was done in collusion against Brandon Hart that only could have been done at the highest level of intelligence like the FBI or counterparts.")); 15 ("[A] professional in statistics will testify in this matter and the defense could not purchase a counter professional in this field to argue that due to all of the government interference with fabricated reasons and attacks is not a certainty that is was on purpose and driven by the FBI to make Brandon Hart not pursue his lawsuit against the FBI and the other defendants."); 38 ("[I]f someone cant see through all the items I have mentioned that are illegal attacks against me, then they should use this simple logic that only the 'Good Guys' like the FBI would continue their pursuit when caught in the act[.]").

The allegations in the Complaint do not give Defendants "fair notice" of any cognizable claim asserted against them.[9] *See Salahuddin*, 861 F.2d at 42. Dismissal under Rule 8 is therefore appropriate because the Complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *See Owens*, 5 F. App'x at 16; *Pappanikolaou v. New York City*, No. 01-cv-865, 2005 WL 1661649, at *10, 2005 U.S. Dist. LEXIS 39201, at *29 (E.D.N.Y. July 14, 2005) ("Complaints which ramble, which endlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the

---

[9] While Plaintiff has included a list of wide-ranging statutes and doctrines that purport to be the "legal basis" for his claims, (*see* Dkt. No. 1, at 40-46 (citing, inter alia, the Federal Tort Claims Act ("FTCA"), Title VII, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Privacy Act of 1974, 42 U.S.C. § 2000a, and the Fifth Amendment)), the Court is not required to sift through Plaintiff's confusing and speculative allegations to determine if any of these statutes are applicable to his (factually frivolous) claims. *See Miller v. Abusive Members Within the City N.Y.*, No. 19-cv-10904, 2020 WL 917258, at *2, 2020 U.S. Dist. LEXIS 32852, at *4-5 (S.D.N.Y. Feb. 25, 2020). ("[E]ven a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." (citation omitted)).

7

heart of the claim do not comport with [the goals of Rule 8]." (quoting *Prezzi v. Berzak,* 57 F.R.D 149, 151 (S.D.N.Y. 1972))).

### B.      Rule 12(b)(6)

Defendants raise several additional arguments but both assert that Plaintiff's claims are frivolous and should be dismissed under 12(b)(6). (*See* Dkt. Nos. 11-3, at 15 (arguing that Plaintiff's speculative allegations "that Indeed and 'resourceful people' colluded to terminate his accounts so he could not hire cybersecurity and digital forensics experts" are "fantastical and simply not plausible on their face"); 35-1, at 22 (arguing that the Complaint "strings together a series of random harms that have allegedly befallen him over an unspecified number of years that appears to exceed a decade" but "does not provide any facts tying those allegations to the FBI in any way beyond mere speculation, conjecture, and surmise")). The Court agrees.

A court may "dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[,]' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). "[A] plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense." *Compton v. Pavone*, No. 20-cv-1051, 2021 WL 981489, at *3, U.S. Dist. LEXIS 48913, at *8 (N.D.N.Y. Mar. 16, 2021) (citation omitted), *aff'd,* No. 21-931, 2022 WL 1039966, 2022 U.S. App. LEXIS 9341 (2d Cir. Apr. 7, 2022).

The Court finds that Plaintiff's claims are factually frivolous and subject to dismissal for failure to state a claim. Plaintiff's allegations that the FBI Defendants are colluding with various entities, including Indeed, are not only entirely speculative but largely irrational. (*See, e.g.,* Dkt. No. 1, at 19 ("[I]t seems like I have been given a softward/app that is a one size fits all that

8

controls my entire network and electronics. . . . This is a software that comes across from being hundreds of years in the future the way it is marketed and per their website, but they have a version that is used to hurt people versus defending people and companies' electronics."), 24 ("When I started this written complaint, after several pages were completed, my keyboard stopped working. They did this right before I needed to print out documents to add to Charlotte and time was of the essence, my printer would not work."), 24-25 ("They had contracts terminated for no cause, blocked my bids from getting to government departments, colluded with government owners to hold onto approved payment applications and invoices, cancelled credit cards, poisoning me and my family, attempted murder and follow up with more threats of murdering someone in my family and do this constantly with intelligently written emails that should have gone to my spam, but show up in my inbox.")).

Plaintiff's claims are "fanciful," and the Court must accordingly dismiss this action as frivolous. *See Gallop*, 642 F.3d at 368 (2d Cir. 2011) ("[T]he courts have no obligation to entertain pure speculation and conjecture."); *Raoul v. City of New York Police Dep't*, No. 14-cv-1787, 2015 WL 1014204, at \*2, 2015 U.S. Dist. LEXIS 28595, at \*6 (E.D.N.Y. Mar. 6, 2015) (dismissing as frivolous where the plaintiff's claims were "based purely on wide-ranging, incoherent allegations of a massive conspiracy by numerous federal, state, and local government entities to persecute him through tactics ranging from aerial drone surveillance to messages beamed directly into his mind").

### C.    Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d

Cir. 2000). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

Here, Plaintiff's complaints against the FBI have been dismissed or recommended for dismissal by other federal courts for largely the same reasons identified by this Court. *See Hart I*, 2024 WL 4009646, at *3, 2024 U.S. Dist. LEXIS 157064, at *5-6 ("Plaintiff airs vague, illusory, and conclusory grievances about the FBI's lack of assistance or investigation into his insistence (for at least twelve years) of unspecified bad actors threatening or attempting to cause ambiguous and implausibly alleged harms. . . . These allegations do not come close to surviving the pleading standards delineated in *Twombly* and *Iqbal*."); *Hart III*, 2025 WL 1190808, at *3, 2025 U.S. Dist. LEXIS 76773, at *8 (warning Plaintiff that he "should not file another overlength and disorganized collection of documents" and instead "must submit a single amended complaint that (1) contains all of the facts supporting his claims and (2) complies with the Federal Rules of Civil Procedure"); *Hart IV*, 2025 U.S. Dist. LEXIS 110084, at *7-8 ("The [proposed amended complaint], which spans 84 pages and contains lengthy, repetitive paragraphs and multiple exhibits, is prolix and fails to comply with Rule 8. . . . The Court is not required to sift through Mr. Hart's lengthy and confusing allegations to do the work of refining them into a cognizable claim.").

Because Plaintiff's complaint is factually frivolous, and because Plaintiff has been told repeatedly by multiple courts that his complaints against the FBI have not met the federal pleading standards, the Court denies leave to amend as futile. *See Jean-Baptiste v. United States Dep't of Just.*, No. 22-cv-8318, 2023 WL 2390875, at *3, 2023 U.S. Dist. LEXIS 37410, at *7

(S.D.N.Y. Mar. 6, 2023) (dismissing frivolous complaint on initial review without leave to amend); *Compton*, 2021 WL 981489, at \*5, 2021 U.S. Dist. LEXIS 48913, at \*13 ("Because the complaint and supporting submissions are devoid of any basis in law or fact, better pleading will not cure the defects. Accordingly, leave to amend will be denied as futile.").

V.    **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 11, 35) are **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint is **DISMISSED;** and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 4) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: <u>May 13, 2026</u>
          Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

11